United States District Court
Southern District of Texas
**ENTERED**
July 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNIT PETROLEUM COMPANY, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-CV-01260 |
| § | |
| KOCH ENERGY SERVICES, LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court is the plaintiff's, Unit Petroleum Company's ("Unit"), motion for summary judgment (Dkt. No. 32). The defendant, Koch Energy Services, LLC ("Koch"), has filed a response to the defendant's motion (Dkt. No. 36), and Unit has filed a reply (Dkt. No. 38). After reviewing the filings, the pleadings, the record, and the applicable law, the Court determines that Unit's motion should be **DENIED**.

### II.   FACTUAL BACKGROUND

This dispute over a natural gas contract arises from Winter Storm "Uri," which devastated parts of Texas and Oklahoma in February of 2021. Five months before Uri, Unit and Koch executed a base agreement under the North American Energy Standards Board General Terms and Conditions Base Contract for Sale and Purchase of Natural Gas ("Base Contract"). The Base Contract provides the framework for specific transactions, which are memorialized in Transaction Confirmations. The

Transaction Confirmations designate the parties' obligation as "firm," which the Base Contract defines as meaning that "either party may interrupt its performance without liability only to the extent that such performance is prevented for reasons of force majeure." The Base Contract defines force majeure in detail:

> 11.2. Force majeure shall include, but not be limited to, the following: (i) physical events such as acts of God, landslides, lightning, earthquakes, fires, storms or storm warnings, such as hurricanes, which result in evacuation of the affected area, floods, washouts, explosions, breakage or accident or necessity of repairs to machinery or equipment or lines of pipe; (ii) weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe . . . Seller and Buyer shall make reasonable efforts to avoid the adverse impacts of a Force majeure and to resolve the event or occurrence once it has occurred in order to resume performance.

The relevant Transaction Confirmations specified West Pool, a natural gas aggregation facility on the Enable Oklahoma Intrastate Pipeline, as the delivery point. Because the Transaction Confirmation created a combined daily range of 22,500 MMBtu/day, the parties agreed that Unit would inform Koch of its daily supply before the start of each month. On January 21, 2021, Unit informed Koch that during February, Unit would sell Koch 15,000 MMBtu/day as a base load, and up to 6,500 MMBtu/day as a swing option.[1]

The following month, Uri brought snow, ice, and unusually cold temperatures to Texas and Oklahoma. Pipes froze, wells and meters were damaged, and many

---

[1] A swing option "is often bundled together with a standard base-load forward contract which specifies, for a given period and a predetermined price, the amount of the commodity to be delivered over that period. The swing portion allows flexibility in the delivery amount around the amount of the base-load contract." Jaillet, Patrick & Ronn, Ehud & Tompaidis, Stathis, *Valuation of Commodity-Based Swing Options*, 50 MANAGEMENT SCIENCE 909-921 (2004) 10.1287/mnsc.1040.0240.

facilities lost power. Unit's wells and gathering equipment were no exception. Between this damage and Unit's gas processing contractor declaring force majeure on February 12, 2021, Unit knew it would lack the supply to fill its orders. On February 12 Unit verbally alerted Koch that Unit was declaring force majeure, and on February 14 Unit sent Koch a letter to the same effect. Unit explained that Uri had reduced its gas supply such that it could not fill Koch's order. Koch rejected Unit's force majeure declaration, insisting that Unit perform by either "buying back" its contract obligation or buying gas on the spot market[2] for Koch. Unit did neither, maintaining that force majeure excused Unit's performance. From February 13-17, Unit did not deliver the full amount of gas to Koch. It is unclear how much gas, if any, Unit did deliver to Koch. However, during this same time period, Unit delivered gas to two other purchasers—Spire Marketing and United Energy Trading. Unit had interruptible—as opposed to firm—obligations with both purchasers.

Koch responded by buying gas on the spot market directly. The combination of a sharp decline in the regional gas supply due to Uri's damage and a spike in demand caused by Uri's cold temperatures resulted in spot market prices significantly greater than those contemplated in Koch's agreement with Unit. Koch sought to offset this difference, which Koch calls its "cover damages," in two ways. First, Koch withheld $1,372,957.47 that it undisputedly owed Unit for gas delivered earlier in February.

---

[2] "Spot market (natural gas): A market in which natural gas is bought and sold for immediate or very near-term delivery, usually for a period of 30 days or less. The transaction does not imply a continuing arrangement between the buyer and the seller. A spot market is more likely to develop at a location with numerous pipeline interconnections, thus allowing for a large number of buyers and sellers." The U.S. Energy Information Administration Glossary, https://www.eia.gov/tools/glossary/index.php?id=S

Second, Koch invoiced Unit for $5,186,261 for the remainder of the price of the gas that Koch bought on the spot market, after crediting the $1,372,957.47 that it owed Unit. Koch sent Unit a letter on March 26, 2021, explaining its invoice and justifying its withholding of the $1,372,957 by a "netting" provision in the Base Contract.

A week later, Unit sued Koch in Texas state court seeking a declaratory judgment that its force majeure declaration was proper. Unit also brought a breach of contract claim for Koch's netting the $1,372,957. Koch removed the case to this Court under 28 U.S.C. § 1441 and filed a counterclaim for breach of contract.

## III.  CONTENTIONS OF THE PARTIES

Unit argues that it was entitled to declare force majeure because the winter storm was a qualifying event under the Base Contract, and Unit had no obligation to buy gas on the spot market or buy back its obligation. Unit asserts that an interpretation of force majeure that required Unit to either buy gas or buy back its obligation would effectively eliminate the force majeure clause. As for Koch's "netting," Unit insists that the Base Contracts permits netting only for undisputed amounts. Because Unit disputes Koch's cover damages, Unit argues that crediting the money Koch owed Unit against its cover damages (rather than simply paying Unit) was a breach of contract.

Koch responds that fact questions preclude summary judgment: whether the winter storm caused Unit's nonperformance, and whether Unit undertook reasonable efforts to avoid the effects of the force majeure event. Substantively, Koch argues that industry practice requires a seller to either buy back its obligation or buy gas on the

spot market during an event such as Uri. Koch also asserts that Unit should have allocated to Koch gas that it sold under interruptible contracts. Finally, Koch insists that Section 10.2 of the Base Contract permits netting in the event of nonperformance.

## IV.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to meet its burden to show the existence of an essential element of its case. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). When determining whether there is a genuine issue of material fact, the Court must construe "all facts and inferences . . . in the light most favorable to the nonmoving party." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

The movant bears the initial burden of identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant meets its burden, the burden shifts to the

nonmovant to "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

## V. ANALYSIS & DISCUSSION

An issue of material fact precludes Unit's summary judgment motion. Both Unit's declaratory judgment action and Koch's counterclaim require the Court to answer whether Unit's gas allocation was "fair and reasonable." "[T]he seller's obligation during a valid force majeure event is to provide a 'fair and reasonable' allocation of the available gas." *LNG Americas, Inc. v. Chevron Nat. Gas*, No. CV H-21-2226, 2023 WL 2920940, at *10 (S.D. Tex. Apr. 12, 2023) (citing *Tejas Power*, No. 14-98-00346-CV, 1999 WL 605550, at *2 and Tex. Bus. & Com. Code Ann. § 2615(2)). The Court must also determine whether Unit exerted "reasonable efforts" under the Base Contract to avoid the effects of the force majeure event. The Fifth Circuit offers the following guidance when interpreting reasonability:

> The word "reasonable" is not ambiguous. When it modifies other terms in a contract—reasonable time, reasonable value—it is used by the parties to designate that specific time, value, or dispatch that "would be thought satisfactory to the offeror by a reasonable man in the position of the offeree." *This is a question of fact that must be answered by looking to the circumstances of the case*, including "the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade."

*Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 425 (5th Cir. 2013) (internal citations omitted) (emphasis added). Looking to the circumstances of the case, Koch offers testimony that the volumes that Unit supplied to United Energy and Spire under Unit's interruptible obligations "could have completely covered the

Unit Deficient Volumes for two of the days within the Unit Deficient Period and partially covered the Unit Deficient Volumes for the remaining days," and that "[f]irm delivery obligations take precedence over Interruptible deals." Dkt. No 36, Exh. E. Unit does not address these transactions or argue whether allocating gas to United Energy and Spire was "fair and reasonable." "Whether a particular allocation is fair and reasonable is a fact issue." *Tejas Power Corp. v. Amerada Hess Corp.*, No. 14-98-00346-CV, 1999 WL 605550, at *2 (Tex. App. Aug. 12, 1999). As Koch's expert witness opines, he and Unit's expert witness "disagree on what activities are reasonable" in the context of "reasonable efforts." Dkt. No 36, Exh. F; *See* Dkt. No. 33, Exh. 13. This disagreement renders these issues inappropriate for summary judgment.

### VI. CONCLUSION

Because a reasonable jury could disagree both as to whether Unit's gas allocation was fair and reasonable and whether Unit exerted reasonable efforts to avoid the effects of the force majeure event, Unit's motion for summary judgment is **DENIED**.

IT IS SO **ORDERED**.

SIGNED and ENTERED this 27th day of July, 2023.

Kenneth M. Hoyt
United States District Judge